# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALVADOR CERVANTES,<br><br>Plaintiff,<br><br>v.<br><br>SALAZAR,<br><br>Defendant. | No. 2:15-CV-2686-KJM-DMC-P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendant's motion for summary judgment (ECF No. 27). Defendant contends judgement of dismissal is appropriate as a matter of law because plaintiff failed to exhaust administrative remedies prior to filing suit.

## I. PLAINTIFF'S ALLEGATIONS

This action proceeds on plaintiff's first amended complaint. See ECF No. 8. Plaintiff alleges:

> On Friday, May 22, 2015, I submitted a CDCR form 602 appeal to the Appeals Coordinator. I states I had safety concerns because some of the prisoners were being bullies. The Appeals Coordinator contacted Program II Sergeant Salazar. He introduced a CDCR 128b safety concern chrono and he wanted me to sign it but I refused to sign the chrono. Then he placed me in hand cuff [sic]. At that point, I thought he was going to take me to Ad-Seg, but he escorted me back to the cell.

1

> I suddenly stopped walking forward and I was getting scared, because I did not know Salazar could do that. Then he utilized his physical strength and body weight to force me to the floor. I was wearing eyeglasses and when I hit the floor, they fell to the side.

ECF No. 8, pg. 4.

## II. THE PARTIES' EVIDENCE

### A. Defendant's Evidence

Defendant contends the following facts are undisputed:

1. At all times relevant to the complaint, plaintiff was a prisoner incarcerated at Deuel Vocational Institution (DVI). (Plaintiff's first amended complaint, ECF No 8, pg. 5).

2. The only appeal plaintiff filed while at DVI after May 22, 2015, received at the third level of review was log no. DVI-X-15-01615. (Spaich declaration, ¶¶ 6 and 14, and Exhibit A; Cantu declaration, ¶¶ 4, and Exhibit A).

3. In this appeal, plaintiff described his claim as follows: "When Sargeant [sic] Salazar dropped me to the concrete floor, my eye glasses fell and didn't gave [sic] them back." (Cantu declaration, ¶ 5, and Exhibit B).

4. In the "Action Requested" section of the appeal, plaintiff stated: "I want to know what he did with my glasses, if lost or broken, I need new's [sic] ones." (Id.).

5. In his third level appeal, plaintiff stated that he was not satisfied with the responses to date because he had not been provided his glasses. (Spaich declaration, ¶ 8, and Exhibit B).

6. Plaintiff's third-level appeal was cancelled as untimely. (Id. at ¶ 12, and Exhibit B).

7. Plaintiff was advised that his appeal had been cancelled and could not be resubmitted, but that he could file a separate grievance concerning the cancellation. (Id.).

See ECF No. 27-2 (defendant's separate statement).

### B. Plaintiff's Evidence

In opposition to defendant's motion, plaintiff repeats the allegations set forth in the first amended complaint and attaches copies of medical records and a rules violation report arising from the events of May 22, 2015. See ECF No. 28.

## III. STANDARD FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record

taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

## IV. DISCUSSION

Prisoners seeking relief under § 1983 must exhaust all available administrative remedies prior to bringing suit. See 42 U.S.C. § 1997e(a). This requirement is mandatory regardless of the relief sought. See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)). Because exhaustion must precede the filing of the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies while the lawsuit is pending. See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002). The Supreme Court addressed the exhaustion requirement in Jones v. Bock, 549 U.S. 199 (2007), and held: (1) prisoners are not required to specially plead or demonstrate exhaustion in the complaint because lack of exhaustion is an affirmative defense which must be pleaded and proved by the defendants; (2) an individual named as a defendant does not necessarily need to be named in the

grievance process for exhaustion to be considered adequate because the applicable procedural rules that a prisoner must follow are defined by the particular grievance process, not by the PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some, but not all, claims are unexhausted. The defendant bears burden of showing non-exhaustion in first instance. See Albino v. Baca, 697 F.3d 1023 (9th Cir. 2012). If met, the plaintiff bears the burden of showing that the grievance process was not available, for example because it was thwarted. See id.

The Supreme Court held in Woodford v. Ngo that, in order to exhaust administrative remedies, the prisoner must comply with all of the prison system's procedural rules so that the agency addresses the issues on the merits. 548 U.S. 81, 89-96 (2006). Thus, exhaustion requires compliance with "deadlines and other critical procedural rules." Id. at 90. Partial compliance is not enough. See id. Substantively, the prisoner must submit a grievance which affords prison officials a full and fair opportunity to address the prisoner's claims. See id. at 90, 93. The Supreme Court noted that one of the results of proper exhaustion is to reduce the quantity of prisoner suits "because some prisoners are successful in the administrative process, and others are persuaded by the proceedings not to file an action in federal court." Id. at 94.

A prison inmate in California satisfies the administrative exhaustion requirement by following the procedures set forth in §§ 3084.1-3084.8 of Title 15 of the California Code of Regulations. In California, inmates "may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). The inmate must submit their appeal on the proper form, and is required to identify the staff member(s) involved as well as describing their involvement in the issue. See Cal. Code Regs. tit. 15, § 3084.2(a). These regulations require the prisoner to proceed through three levels of appeal. See Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.2, 3084.7. A decision at the third formal level, which is also referred to as the director's level, is not appealable and concludes a prisoner's departmental administrative remedy. See id. Departmental appeals coordinators may reject a prisoner's administrative appeal for a number of reasons, including untimeliness, filing excessive

appeals, use of improper language, failure to attach supporting documents, and failure to follow proper procedures. See Cal. Code Regs. tit. 15, §§ 3084.6(b). If an appeal is rejected, the inmate is to be provided clear instructions how to cure the defects therein. See Cal. Code Regs. tit. 15, §§ 3084.5(b), 3084.6(a).

In certain circumstances, the regulations make it impossible for the inmate to pursue a grievance through the entire grievance process. See Brown v. Valoff, 422 F.3d 926, 939 n. 11 (9th Cir. 2005). Where a claim contained in an inmate's grievance is characterized by prison officials as a "staff complaint" and processed through a separate confidential process, prison officials lose any authority to act on the subject of the grievance. See id. at 937 (citing Booth, 532 U.S. at 736 n. 4). Thus, the claim is exhausted when it is characterized as a "staff complaint." See id. at 940. If there are separate claims in the same grievance for which further administrative review could provide relief, prison regulations require that the prisoner be notified that such claims must be appealed separately. See id. at 939. The court may presume that the absence of such a notice indicates that the grievance did not present any claims which could be appealed separate from the confidential "staff complaint" process. See id.

Here, defendant argues plaintiff submitted one inmate grievance during the relevant time period, log no. DVI-X-15-016515. According to defendant, this single appeal was insufficient to exhaust plaintiff's administrative remedies because: (1) it failed to complain about defendant Salazar's alleged use of excessive force; and (2) even if it did, it was cancelled at the third level of review and, thus, was not reviewed for a final decision through the entire administrative process. Plaintiff does not respond to defendant's argument or evidence. In his opposition brief, plaintiff repeats the allegations contained in the first amended complaint and attaches as exhibits medical records showing injuries sustained in the May 22, 2015, incident and a copy of a rules violation report arising from that incident.

/ / /
/ / /
/ / /
/ / /

A. **Reference to Excessive Force**

According to defendant:

> Plaintiff submitted appeal log number DVI-X-15-01615 on June 4, 2015. (DUF 2.) In the space provided on the appeal form to "Explain your issue," Plaintiff wrote: "When Sargeant [sic] Salazar dropped me to the concrete floor, my eye glasses fell and didn't gave [sic] them back." (DUF 3.) In the "Action Requested" section, Cervantes wrote: "I want to know what he did with my glasses, if lost or broken, I need new's [sic] ones." (*Id.*) The appeal was bypassed at the first level of review. (*Id.*)
>
> * * *
>
> Plaintiff submitted the appeal to the third level of review, stating "I am not satisfied with the second level response, up to today, I have unable to get my eye glasses and I mailing the receipt of where I purchased my eye glasses. . . ." (DUF 5.)
>
> * * *
>
> It is clear that Plaintiff was concerned only with his glasses, and not with a use of force. Although Plaintiff used phrases like "when Salazar dropped me to the concrete floor" and when "Salazar took him to the ground," which could be construed as Plaintiff complaining about force, a review of the appeal as it made its way through the second level of review and to the third level of review, does not support this construction. At every level of the appeal, Plaintiff was and remained focused on the issue of getting his glasses back. Nowhere in the appeal does Plaintiff mention use of force, excessive force, or unnecessary force. Of course, Plaintiff was not required to include legal terminology or legal theories, but his appeal must at least put the prison on notice of the problem in order to allow them to correct it. *See Griffin*, 557 F.2d at 1120; *Sapp*, 623 F.3d at 824. Plaintiff's appeal did not do that. Therefore, Plaintiff's appeal log number DVI-X-15-01615 failed to exhaust his excessive force claim.

Defendant's argument is persuasive. At best, plaintiff's references to being dropped to the floor and taken to the ground are vague as to whether plaintiff was complaining of the excessive use of force. Certainly plaintiff describes a level of force, but there are no indications in plaintiff's grievance he complained that the force used was excessive. What is clear from defendant's evidence, which is not disputed by plaintiff, is that plaintiff was primarily concerned with his glasses and that he believed defendant Salazar was responsible for his not having them. This conclusion is confirmed by plaintiff's statement in his third-level appeal that he was not satisfied with prior determinations because he still did not have his glasses.

///

///

7

Because plaintiff's inmate grievance did not concern the alleged use of excessive force by defendant Salazar, it failed to exhaust plaintiff's administrative remedies as to the claim raised in this action.

### B. Cancellation at Third Level of Review

As a separate and independently sufficient reason to find plaintiff failed to exhaust administrative remedies, defendant asserts:

> . . . Plaintiff is still precluded from bringing this claim because Plaintiff did not exhaust this appeal through the third level of review. Instead, Plaintiff's appeal was cancelled at the third level of review for exceeding time limits. (DUF 8-10.) A cancellation or rejection decision does not exhaust administrative remedies. Cal. Code Regs. tit. 15, § 3084.1(b); *see also Bradley v. Villa*, No. 1:10-CV-01618 LJO, 2015 WL 3540673, at *5 (E.D. Cal. June 3, 2015) ("A cancellation or rejection at the third level does not exhaust an inmate's administrative remedies because it is not a decision on the merits of the claim.") Further, Plaintiff did not submit a separate appeal concerning the cancellation decision, even though Plaintiff was provided with instructions on how to do so. (DUF 10-12.) Accordingly, this appeal fails to exhaust Plaintiff's excessive force claim.

While defendant's undisputed evidence clearly establishes that plaintiff's appeal was cancelled at the third level of review as untimely, defendant's evidence also shows that it was characterized as a staff complaint. Defendant offers the declaration of B. Cantu, an Appeals Coordinator at DVI, in support of his motion. See ECCF No. 27-2. Attached to the Cantu declaration as Exhibit A is an appeals log indicating that plaintiff's appeal was characterized by the prison as a "staff complaint[]." Id. at 5. Attached to the Cantu declaration as Exhibit B is a June 25, 2015, memorandum response to plaintiff's appeal which also characterizes plaintiff's complaint as a "staff complaint." Id. at 9. Defendant also offers the declaration of J. Spaich, the Acting Chief of the Office of Appeals for the California Department of Corrections and Rehabilitation. See ECF No. 27-4. Attached to the Spaich declaration as Exhibit A is s different appeal log indicating that plaintiff's appeal was characterized as a "staff complaint[]." Id. at 6. Attached as Exhibit B is an October 16, 2015, memorandum advising plaintiff that his third-level appeal had been cancelled as untimely, again referring to plaintiff's appeal as a "staff complaint[]." Id. at 8.

/ / /

To the extent plaintiff's appeal was characterized as a staff complaint, the lack of a merits determination at the third level is irrelevant and does not support a finding that plaintiff's claim is unexhausted. Nonetheless, as discussed above, the court finds that plaintiff's appeal – whether a staff complaint or not – relates to the loss of his glasses and not the use of excessive force alleged in this action. As such, it failed to exhaust plaintiff's administrative remedies.

## V.  CONCLUSION

Based on the foregoing, the undersigned recommends that defendant's motion for summary judgment (ECF No. 27) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  November 1, 2019

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE